UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
IQBAL NAZ SULEHRIA,
                                :
                Plaintiff,          REPORT & RECOMMENDATION
                                :
        -against-                   05 Civ. 4486 (SHS)(MHD)
                                :
THE CITY OF NEW YORK et al.,
                                :
                Defendants.
--------------------------------x

TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:


     Plaintiff Iqbal Naz Sulehria is an employee of the New York
City Department of Correction. He filed this pro se lawsuit in
2005, asserting claims under 42 U.S.C. § 1983 and 1985 for
employment discrimination and other misconduct directed against him
on the job. For these misdeeds, he seeks relief against no less
than thirty-seven named defendants and twenty-two John Doe
defendants.[1]


     Defendants have moved to dismiss the complaint as barred by
res judicata and collateral estoppel. Alternatively, they argue
that plaintiff fails to state a claim against at least six

---

[1] It bears mention that a few months after filing this
lawsuit, plaintiff filed a very similar action in this court,
naming twenty-three defendants (Sulehria v. City of New York, 05
Civ. 7491 (SHS)), and earlier this year filed still another such
suit against twenty-four defendants (Sulehria v. City of New
York, 06 Civ. 4072 (SHS)).

1

defendants because he fails adequately to plead their involvement in any alleged wrongful conduct. Defendants also suggest that some of plaintiff's City and State law claims are legally insufficient, time-barred, precluded by plaintiff's failure to exhaust administrative remedies, or barred by New York's doctrine of election of remedies. Plaintiff has opposed the motion and submitted a veritable mountain of papers in support of that position.

For the reasons that follow, we recommend that the motion be granted in part and denied in part.

I. Plaintiff's Complaint

Plaintiff is a naturalized United States citizen who is Pakistani by birth and a practicing Muslim. (Compl. ¶ 6). He has been employed as a Legal Coordinator by the New York City Department of Correction since 1995. (Id.)

In a 48-page complaint, he alleges that, from May 2, 2002 until May 2005, he was subjected to a lengthy series of adverse actions by supervisors or fellow workers while on the job, and that this conduct amounted to conspiratorial harassment, some of which he appears to ascribe to discrimination on the basis of national

origin or religion and some to retaliatory animus. He also accuses
several defendants of engaging in misconduct -- some of a criminal
nature -- although not directed against him.

Many of plaintiff's complaints concern his being subjected to
what he implies were unnecessary or discriminatory searches when
entering the Department's work facilities. Others involve allegedly
insulting language or threats from supervisors or fellow workers,
and still others concern alleged refusals by supervisors to give
plaintiff access to bathrooms or other facilities, appropriation of
his desk space, other forms of office hostility, and improper
denials of overtime compensation. He also complains that he was
compelled to perform legal services for inmates for which he
believed himself to be unqualified. Plaintiff characterizes some of
this alleged misconduct as discriminatory, some as retaliation for
prior complaints, and some as simply malicious behavior that was
countenanced by the managerial level of the Department.

Based on all of these allegations, plaintiff asserts a series
of ill-defined claims under 42 U.S.C. §§ 1983 and 1985 that appears
to include assertions that his rights under the First Amendment,
the Fourth Amendment, the Eighth Amendment, the Equal Protection
Clause and the Thirteenth Amendment have been violated.  He also
asserts a variety of claims under state law, including the State

and City Human Rights Law and a number of common-law tort theories.

## II. Defendants' Motion to Dismiss

      Defendants have moved to dismiss most or all of the complaint.[2] Their principal argument is that many of plaintiff's claims are barred by either res judicata or collateral estoppel, based on a ruling by the New York State Division of Human Rights ("SDHR"), which found no probable cause for an administrative charge filed by plaintiff in October 2004. (Sulehria v. NYC Dep't of Corrections, SDHR Case No. 10102232, Determination and Order After Investigation ("SDHR Determination"), dated Mar. 31, 2005, attached as Ex. C to Defs.' Mem. Supp. Mot. to Dismiss ("Defs.' Mem."), dated Sept. 30, 2005). In addition, they assert that plaintiff's decision to seek a remedy from the SDHR amounts to an election of remedies and bars the assertion of some of his City and State law claims in this court. (Defs.' Mem. at 4 n.4).

      Defendants next argue that the complaint must be dismissed as against a number of individual defendants because plaintiff fails adequately to allege their involvement in, or responsibility for, the misconduct about which he complains. (Id. at 8). Defendants

_____

      [2] Regrettably, defendants offer very little specification as to which of plaintiff's many allegations they are targeting and on which grounds.

4

then launch a broad and very vague argument to the effect that the complaint fails to state a viable claim on a number of theories, including, but not limited to, claims of conspiracy, the Eighth Amendment, the Thirteenth Amendment, defamation, invasion of privacy, "and other state law claims." (Defs.' Mem. at 11-12). Finally, defendants contend that "some of the tort claims" should be dismissed for failure to "properly" exhaust his administrative remedies or as barred by the applicable statute of limitations. (Id. at 12).

III. ANALYSIS

We address defendants' arguments in the order in which they are presented to us. For reasons to be noted, we conclude that their motion should be granted in part and denied in part.

A. Res Judicata & Collateral Estoppel

Defendants seek dismissal of some or all of the complaint on the basis of res judicata and collateral estoppel. These defenses are premised on a ruling by the SDHR that found no probable cause for a set of claims of discrimination embodied in a charge that Sulehria filed in October 2004. (SDHR Determination at 1; SDHR Compl., Case No. 10102232, dated Oct. 26, 2004, attached as Ex. B

to Defs.' Mem.). The SDHR issued that decision after the Department of Correction had submitted a statement of position and a substantial set of documents (Defs.' SDHR Submission, Case No. 10102232, dated Jan. 3, 2005), and the plaintiff had submitted a substantive and documented written reply. (Pl.'s Verified Rebuttal in Response to Respondent's Answer, Case No. 10102232, dated Mar. 23, 2005).

Since defendants rely on a state-agency order as preclusive of plaintiff's federal claims, we must first determine whether the federal statutes under which plaintiff sues bar any preclusive effect from state-agency decisions. See, e.g., University of Tennessee v. Elliot, 478 U.S. 788, 795-99 (1986)(holding that Title VII barred preclusive effect of state-agency decisions, but that the Reconstruction-era civil rights statutes did not); Astoria Fed. Sav. & Loan Ass'n v, Solimino, 501 U.S. 104, 106 (1990)(holding that the Age Discrimination in Employment Act barred preclusive effect of agency decisions). If the federal statutes in question do not rule out such preclusion, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Elliot, 478 U.S. at 799. See, e.g., Migra v. Warren City School Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984).

6

Plaintiff's federal claims are asserted under the civil rights statutes enacted during the Reconstruction era, in particular, the provisions embodied in 42 U.S.C. §§ 1983 and 1985. The Supreme Court has held that claims under that legislation may be precluded by agency decisions if the applicable state law permits. See, e.g., Elliot, 478 U.S. at 799; accord Kirkland v. Peekskill, 828 F.2d 104, 107 (2d Cir. 1987).

As for the treatment of such agency decisions under New York law, the New York courts recognize as binding

> quasi-judicial determinations of administrative agencies, when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law. "[S]uch determinations, when final, become conclusive and binding on the courts."

Ryan v. New York Tel. Co., 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 825-26 (1984)(citations omitted). This principle extends to decisions by the SDHR that a party's charge is not supported by probable cause. See, e.g., Kirkland, 828 F.2d at 107-09; Ibrahim v. New York State Dep't of Health, 692 F. Supp. 1471, 1473 (E.D.N.Y. 1988).

The formulation adopted by the New York Court of Appeals in Ryan, and particularly its reference to "procedures substantially

similar to those used in a court of law," 62 N.Y.2d at 499, 478
N.Y.S.2d 823, 825-26, raises a potentially serious question as to
whether determinations by the SDHR that rely solely on written
submissions and that are not subsequently reviewed by a state court
will trigger preclusion.[3] In several decisions in the 1980s, the
Second Circuit at least suggested that the state courts would grant
preclusive effect to unreviewed agency decisions that were premised
on a written record and not based on a hearing. See DeCintio v.
Westchester County Med. Center, 821 F.2d 111, 116-18 (2d Cir.
1987); Kirkland, 828 F.2d at 108-09. Indeed, this suggestion in
these cases has more recently been noted by the Circuit, see
Kosakow, 274 F.3d at 730, and several district courts have observed
that these decisions emphasize that the informal nature of a given
administrative proceeding does not present a bar to its having
preclusive effect. See, e.g., Mendoza v. SSC & B Lintas, 799 F.
Supp. 1502, 1510 n.7 (S.D.N.Y. 1992); Ibrahim, 692 F. Supp. at
1473.

The precise question before us in this case -- the preclusive
effect of an unreviewed agency decision based solely on a written

---

[3] There is no question that an agency decision that has been
upheld by a reviewing court, even if the judge exercises only
limited review, will have potentially preclusive effect. See,
e.g., Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468-78,
481-82 (1982); Kosakow v. New Rochelle Radiology Assocs., 274
F.3d 706, 727-28 (2d Cir. 2001).

record -- was not squarely faced by the Second Circuit until its 2001 decision  in Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 727-730, 733-36 (2d Cir. 2001). In that case, the plaintiff alleged discrimination in her employment termination, in violation of the Family Medical Leave Act. Id. at 714. The Circuit Court looked to the decision in Ryan as the touchstone for determining whether preclusive effect could be given to the SDHR's "no probable cause" determination when the agency had acted solely on the sole basis of written submissions and without a hearing and the complainant had not sought Article 78 review of the agency decision. The Court noted that, to give collateral estoppel effect under Ryan, it was necessary for the court to determine whether there was an identity of issues between the agency case and the court suit and whether the complainant in the SDHR proceeding had had a "full and fair opportunity to litigate" the issues. Id. at 730 (citing Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71, 73, 298 N.Y.S.2d 955, 960, 962 (1969)).

    With regard to identity of issues, Kosakow emphasized that the proponent of collateral estoppel bears the burden of proving that the issues brought before the SDHR are essentially the same as those pursued in the subsequent litigation.  Kosakow, 274 F.3d at 730.  We are satisfied that the defendants successfully carry that burden here, at least in part.  Sulehria bases his present federal

claims on many of the same events and allegations of discrimination that he asserted, though more briefly, in his SDHR complaint.(E.g., SDHR Compl. ¶ 3; Compl. ¶¶ 25, 28, 40, 56. See Defs.' Mem. at 5; Defs.' Reply at 3); see also Ibrahim, 692 F.Supp. at 1473 (finding identity of issues where "essence of plaintiff's [federal] claim" had already been brought before the SDHR); Harper v. National Kidney Foundation, Inc., 2005 WL 43774, at *3 (W.D.N.Y. 2005)(finding identity of issues where plaintiff relied on "same instances of alleged disparate treatment, . . . same arguments . . . and evidence in support of her claims"). The one exception is that to the extent that the complaint in this case encompasses events post-dating the filing of the SDHR complaint, those incidents cannot be deemed to have been presented in the agency proceeding.

Having found an identity of issues, 274 F.3d at 730-33, the Court in Kosakow next addressed the "full and fair opportunity" question. As summarized by the panel, the SDHR in that case -- as here -- had received a detailed charge from the plaintiff, a response with documentation from the respondent (including witness statements) and a reply with additional documentation from the complainant, and it had conducted an investigation based on those submissions before issuing a Determination and Order After Investigation. Also, as in this case, the plaintiff in Kosakow had

10

proceeded <u>pro</u> <u>se</u> before the agency and had not sought judicial review of the SDHR decision. Finally, as here, Kosakow did not suggest that she had any new evidence that she could not have obtained for use before the SDHR. <u>Id.</u> at 734.

The Second Circuit emphasized that the burden of establishing that the plaintiff had not had a full and fair opportunity to litigate before the agency rested with the plaintiff, but it concluded that Kosakow had made such a showing. In the preface to that conclusion, the Court noted that the administrative proceeding had included written submissions by the two sides and an investigation by SDHR of unspecified scope and nature. <u>Id.</u> at 734. Of particular significance, the panel observed that there was no indication in the record that there had been any interviews of witnesses or that any discovery had been afforded to the complainant, and it further noted that there was no record of any hearing or conference held with the parties. In short, "[i]t appear[ed] that the no-probable-cause determination was based primarily, if not exclusively, upon a review of the papers submitted." <u>Id.</u>

Quoting the New York Court of Appeals decision in <u>Allied Chem.</u> <u>v. Niagara Mohawk Power Corp.</u>, 72 N.Y.2d 271, 532 N.Y.S.2d 230 (1988), the panel observed that the determinative question was

11

"whether procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired." Kosakow, 274 F.3d at 734 (quoting Allied Chem., 72 N.Y.2d at 276-77, 532 N.Y.S.2d at 232). In pursuing this question, the panel observed that the complainant did not have the same "incentive and initiative to litigate the case in both forums." Id. at 735. Notably, she had not had the benefit of discovery in the administrative proceeding and was thus in no position to challenge the factual representations of the respondent as to its assertedly non-discriminatory reason for terminating her -- that is, corporate financial difficulties -- an issue concerning which the respondent itself had exclusive possession of the evidence. Moreover, as a pro se litigant, Kosakow may not have fully appreciated the importance of aggressively litigating the case before the SDHR even if she understood that the result of the agency proceeding could affect any subsequent litigation. Id. at 735.

The panel further observed that the procedures used by the SDHR were "far less formal than that of the present case." Id. The Court emphasized the lack of any hearing at which the complainant could cross-examine witnesses, an omission that was particularly

12

significant in view of "the informal nature of the evidentiary submissions at DHR . . . ." Id. Of further significance was the fact that the complainant had not been given any opportunity for discovery. Thus, although in a judicial setting a plaintiff might be denied a trial or other evidentiary hearing if the court granted summary judgment, such relief would not be issued by a court without an opportunity for the plaintiff to conduct discovery, including production of documents and depositions of the defendant's witnesses. Id.

Finally, the Court again emphasized the relevance of the fact that the complainant had not been represented by counsel. Because of her status there, "she would not have been expected or able to frame her evidence within the context of the specific legal issues. Nor could she necessarily have known what facts were most relevant or persuasive in proving her case." Kosakow, 274 F.3d at 735-36.[4]

---

[4] In citing Kosakow's pro se status, the Court noted the observation of the New York Court of Appeals that "a party explicitly soliciting resolution of an issue from an agency, who fully participates in the administrative proceeding which follows with the expectation that all will be bound by the result reached there, may be fairly precluded from relitigating the issue in a subsequent proceeding." Id. at 736 n.12 (quoting Allied, 72 N.Y.2d at 277, 532 N.Y.S.2d at 232). As the panel observed, however, the New York courts have invoked this form of administrative estoppel "only where the choice was freely and clearly made with the advice of counsel," id. (citing cases), and "it would seem that New York courts would not extend this principle to an unrepresented party who simply submitted a complaint to the DHR without some indication of a knowledgeable, freely-made choice of forum." Id.

In light of this analysis, the Court concluded that "the issue of whether Kosakow was terminated for legitimate business reasons was not 'adequately tested' or 'fully aired' at the DHR proceeding." Id. at 736 (quoting Allied, 72 N.Y.2d at 276-77, 532 N.Y.S.2d at 232). The Court therefore held that collateral estoppel could not be invoked to preclude her assertion of her FMLA claim in federal court. Id.

This analysis is largely applicable here as well. As noted, the procedures utilized by the SDHR in Sulehria's proceeding were virtually identical to those afforded to Kosakow -- that is, two sets of written submissions by the complainant and one by the respondent, including submission of documents, followed by an "investigation," the details of which are not reflected in the record. As in Kosakow's proceeding, there is no indication that any hearing, or even conference, was held or any discovery afforded to plaintiff, and, like Kosakow, plaintiff was pursuing his case as an apparently untutored pro se complainant.[5]

---

[5] Defendants' evidentiary submission on their motion in this court consisted solely of plaintiff's SDHR charge and the decision of the SDHR. (See SDHR Compl., attached as Ex. B to Defs.' Mem.; SDHR Determination attached as Ex. C to Defs.' Mem.). At our direction they subsequently provided a copy of the respondent's submission to the SDHR. (See Sept. 26, 2006 letter to the Court from Ass't Corp. Counsel Amy Grossberg). Plaintiff supplied a copy of his reply to the SDHR as exhibit 7 to his complaint in Sulehria v. City of New York, 05 Civ. 7491 (SHS).

14

In addition, it bears emphasis that the evidentiary facts pertinent to the respondent's contention that it did not discriminate or retaliate against Sulehria were principally or exclusively in its control. Hence the absence of a hearing or any other opportunity for Sulehria to confront any witnesses for the respondent is particularly significant, and underscores the fact that the procedures utilized before the SDHR did not accord with, or even closely resemble, the protections available to a litigant in court.[6]

Under these circumstances, we conclude that the analysis in <u>Kosakow</u> dictates the outcome here.[7] The procedures provided to Sulehria as a <u>pro se</u> complainant in the SDHR proceeding cannot be said to have been "substantially similar to those used in a court of law" and have not been shown to have "adequately tested" or "fully aired" the question of whether actions taken against him by

---

[6] The only distinction between plaintiff's circumstances and those of Kosakow is that Kosakow pursued an agency claim of disability discrimination, and the resolution of that claim by the agency would have had no effect on her future litigation of such a claim. <u>See id.</u> at 735. This distinction is plainly not determinative; indeed, Kosakow did not pursue an ADA claim in federal court, but rather asserted her discrimination claim under the Family Medical Leave Act. In any event, all of the other considerations cited by the Second Circuit -- which plainly were more critical to its conclusion -- are applicable here.

[7] Defendants neither cite nor discuss the decision in <u>Kosakow</u>.

personnel at the Department of Correction were discriminatory and were substantially motivated by national-origin, religious or retaliatory animus. Hence, defendants' application for preclusion based on either res judicata or collateral estoppel must be denied. Compare Lloyd v. New York Botanical Garden, 2004 WL 2093468, at *3-4 (S.D.N.Y. Sept. 17, 2004)(finding that plaintiff was not collaterally estopped from bringing claims where, inter alia, he was not represented by counsel in administrative context), with Johnson v. County of Nassau, 411 F. Supp. 2d 171, 180-83 (E.D.N.Y. 2006)(invoking collateral estoppel since plaintiff had been represented by counsel before SDHR),[8] and Harper v. National Kidney Foundation, 2005 WL 43774, at *4-6 (W.D.N.Y. Jan. 10, 2005)(upholding collateral estoppel since plaintiff was represented by counsel and given opportunity to participate in a conference where investigator questioned all parties and witnesses and then conferred separately with parties).[9]

---

[8] Johnson cites several New York court decisions that could arguably be read as in some tension with the analysis of New York law in Kosakow, see Johnson, 411 F. Supp. 2d at 182-83, but all predate Kosakow, and in any event we are bound by the Second Circuit's most recently stated view of the pertinent law.

[9] We recognize that Kosakow dealt only with collateral estoppel. That is inconsequential for present purposes. The New York courts view collateral estoppel as a sub-species of res judicata, see, e.g., Ryan, 62 N.Y.2d at 500, 478 N.Y.S.2d at 826 (1984), and they require, for the application of either form of preclusion, that the party against whom the defense is asserted have had a full and fair opportunity to litigate the issue or claim in the prior proceeding. See, e.g., Licini v. Graceland Florist, Inc., 32 A.D.3d 825, 821 N.Y.S.2d 234, 235 (2006).

B. City and State Human Rights Law Claims and Election of
Remedies

Defendants also argue for dismissal of the plaintiff's City
and State Human Rights Law claims on the bases that (1) they are
barred by New York's statute that requires an election of remedies,
and (2) they are precluded by res judicata and collateral estoppel
along with the plaintiff's federal claims.  (Defs.' Mem. at 4 n.4
& 4-5).  We conclude the plaintiff cannot successfully assert most
of his claims under the City and State Human Rights Laws after
having sought resolution through the SDHR. The balance of the
claims, however, are not barred by res judicata and collateral
estoppel.

New York does not permit the pursuit of judicial remedies for
claims of unlawful discriminatory practices that have already been
filed with the SDHR or any "local commission on human rights."
N.Y. Exec. Law § 297(9). See also York v. Association of Bar of
City of New York, 286 F.3d 122, 126-27 (2d Cir. 2002)(describing
the similarities between the State Human Rights Law and the City
Code and noting that both City and State claims are barred once
they have been brought in an SDHR proceeding). This "statutory
mandate for election of remedies" allows for an exception only

where the complaint is dismissed "on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled" -- exceptions clearly not applicable in this case. N.Y. Exec. Law § 297(9); Mendoza v. SSC & B Lintas, 799 F.Supp. 1502, 1509 (S.D.N.Y. 1992). This mandate bars the filing in either state or federal court of City and State law claims that have already been filed with the SDHR. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000); see also Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 884 (2d Cir. 1995)("[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.").

Similar to the requirement of preclusion via res judicata and collateral estoppel, application of election of remedies requires identity between the issues underlying the claims in the SDHR complaint and the issues underlying the claims being brought in the judicial suit. See James v. City of New York, 2003 WL 21991591, at *5 (S.D.N.Y. Aug. 20, 2003) (citing Spoon v. American Agriculturalist, Inc., 103 A.D.2d 929, 930, 478 N.Y.S.2d 174, 175 (3d Dep't 1984)). As already noted, the defendants have demonstrated this identity with respect to claims for incidents pre-dating the filing of the SDHR complaint. As for events post-dating that filing, we cannot conclude that claims based on those

incidents were presented in plaintiff's SDHR charge and hence they cannot be disposed of on election-of-remedies grounds.

In sum, given the clarity of New York's mandate for election of remedies, the defendants' motion to dismiss should be granted with regard to the plaintiff's City and State law claims alleging discriminatory practices by the defendants that were encompassed within plaintiff's SDHR complaint. Otherwise dismissal on this ground should be denied.

Defendants' alternative attack on plaintiff's State and municipal statutory claims is grounded on the invocation of res judicata and collateral estoppel.  For reasons already noted, we are bound by the analysis in <u>Kosakow</u>, which dictates denial of this aspect of defendants' motion.

C. <u>The Pleading of Supervisory Liability</u>

Defendants next target the adequacy of plaintiff's allegations of personal involvement by a number of the individual defendants whom he names. They argue that the pleading does not specify any wrongful conduct by defendants Arthur Harris, Sandra Sheard, James Schott and Bruce Richardson, and that the only allegations concerning defendants Richard Palmer and Raymond Eck -- that they

19

received a complaint about one incident involving an alleged improper search of plaintiff -- is insufficient to state a claim against them. (See Defs.' Mem. at 8-10).

To state a claim against a defendant in a suit under sections 1983 and 1985, the plaintiff must at least allege some basis for inferring the defendant's personal involvement in, or responsibility for, the misconduct alleged by the plaintiff. See, e.g., Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987)(citing Black v. United States, 534 F.2d 524, 527-28 (2d Cir. 1976)). Moreover, supervisory officials may not be held liable for the acts of subordinates unless they either participated in, authorized, encouraged, acquiesced in, or failed to remedy a known wrong. See, e.g., Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In assessing the legal adequacy of a pleading when challenged under Fed. R. Civ. P. 12(b)(6), we must assume the truth of the well-pled factual allegations of the complaint and must draw all reasonable inferences against the defendant. See, e.g, Woodford v. Community Action Agency of Greene County, 239 F.3d 517, 526 (2d Cir. 2001); Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996); Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 903 (2d Cir. 1996). Moreover, the court's obligation to parse the

20

complaint for any arguably available legal theory is particularly acute when the pleading has been drafted by an untutored pro se plaintiff. E.g., Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). So read, a claim may be deemed legally insufficient "only where 'it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" Woodford, 239 F.3d at 526 (quoting, inter alia, Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); accord, King v. Simpson, 189 F.3d 284, 286-87 (2d Cir. 1999); Still, 101 F.3d at 891; Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 4-5 (2d Cir. 1996).

When deciding such a motion, the court must limit its consideration "to facts stated in the complaint[,] . . . documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and] matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); accord Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996). The court may also "rely on matters of public record," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998), and review documents that are deemed "integral" to the pleader's claim. See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 808-09 (2d Cir. 1996);

21

<u>International Audiotext Network, Inc. v. AT&T</u>, 62 F.3d 69, 71-72 (2d Cir. 1995).

It bears emphasis that "the fundamental issue at the dismissal stage 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 184-85 (2d Cir. 2002)(quoting <u>Chance</u>, 143 F.3d 698, 701 (2d Cir. 1998)). Thus, even though "'it may appear on the face of the pleading that a recovery is very remote and unlikely . . . that is not the test.'" <u>Chance</u>, 143 F.3d at 701 (quoting <u>Branham v. Meachum</u>, 77 F.3d 626, 628 (2d Cir. 1996)).

Notwithstanding the liberality of these Rule 12(b)(6) standards, plaintiff's current pleading is deficient in seeking to assert claims against a number of the supervisory defendants. We address each one in turn.

Plaintiff names Arthur Harris as a defendant in his individual and official capacities and identifies him as an "Executive Director" (Compl. ¶ 14), although he does not explain the nature of Harris's responsibilities. His allegations about Harris are found in paragraphs 41 and 56 of the complaint. In paragraph 41, plaintiff alleges in rambling fashion that (1) on one occasion on

January 27, 2005, another defendant -- Karen Powell (identified as
the Director of the Law Libraries) -- "harassed and threatened me
on phone and forced me to prepare legal documents for inmates"; (2)
on December 14, 2004 another defendant -- Larry Triplett -- "forced
me to prepare legal documents for inmates"; and (3) at some point
in February 2005, someone "clipped" various locks that safeguarded
two drawers in a desk assigned to plaintiff and two lockers also
assigned to him, and as a result some documents belonging to
plaintiff were taken. Plaintiff then proceeds to state that "it is
firmly believed that" certain individuals "are responsible for
above mentioned illegal and unconstitutional acts directly or
indirectly and they abetted with each other and acted in concert
with each other . . . ." That list of fifteen individuals includes
Mr. Harris, although plaintiff offers no hint of the basis for
including him in the group of suspected co-conspirators.
Paradoxically, plaintiff goes on to allege that one specific
defendant -- an officer named Hernandez -- had threatened him with
clipping his locks and that another defendant -- Michael Mulmi --
had told an unidentified correction officer that he had been
authorized by co-defendant Karen Powell to clip the locks.

This set of allegations does not satisfy basic pleading
requirements for asserting a claim against Harris. Although Fed. R.
Civ. P. 8 requires only a short and plain statement of the claim,

see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002),
a purely conclusory assertion of a defendant's conspiratorial
responsibility is insufficient to state a claim against that
individual. See In re Parmalat Securities Litigation, 375 F. Supp.
2d 278, 286 (S.D.N.Y. 2005) (citing Gregory v. Daly, 243 F.3d 687,
692 (2d Cir. 2001)). That is all that plaintiff has alleged in this
respect, and he fails even in his motion papers to suggest any
basis for including Harris in this alleged conspiracy.

As for paragraph 56 of the complaint, it alleges somewhat more
specific misconduct by Harris. There the plaintiff asserts that
Harris, Powell and Triplett "manipulated overtime system . . . to
benefit Christian Legal Coordinators. They gave overtime to those
employees who stole City time and who are Christian, Black, White
and Hispanics." This set of allegations is somewhat ambiguous, but
it can be read to assert that Harris and the other two defendants
gave overtime opportunities to employees on a discriminatory basis,
and denied them to plaintiff because of his Pakistani origin or
Islamic faith. Especially in view of plaintiff's status as a pro se
litigant, this allegation should suffice to state a claim against
Harris.

The second defendant who seeks dismissal for lack of
allegations of personal involvement is Sandra Sheard, whom

plaintiff identifies as a fellow "Legal Coordinator". (Compl. ¶ 18). The plaintiff's only reference to her is found in another passage in paragraph 56, in which he complains about the fact that on two occasions he was not permitted access to the office of the legal coordinator at a prison library, and that this occurred because two John Doe defendants refused to unlock the office, and told him that Ms. Sheard, the "steady Legal Coordinator," had the key and was off-duty both days. These allegations do not even hint at any misconduct by Ms. Sheard, much less misconduct by her directed at plaintiff. Hence she is entitled to dismissal of the complaint against her.

The next defendant addressed in the motion is James Schott, whom plaintiff identifies as a corrections officer. (Compl. ¶ 16). The only other reference in the complaint to Officer Schott is in paragraph 41, in which his name appears in the same list of co-conspirators as Arthur Harris. This conclusory listing of suspected conspiracy participants is inadequate to state a claim against Schott, just as it fails to plead a claim against Harris.

The next movant to seek dismissal is Bruce Richardson, who is described by plaintiff as another Legal Coordinator. (Compl. ¶ 16). He is mentioned in paragraphs 37 and 41. The latter reference is identical to the conclusory listing of defendants Harris and

Schott, and is equally inadequate to state a claim against
Richardson. As for paragraph 37, it consists of a recitation of
complaints by plaintiff that various individuals had "harassed" him
on certain days (although plaintiff offers no explanation of the
term "harass"), that other employees had periodically arrived late
to work or left early, and that certain named supervisors had never
taken any "proper action" against defendant Gina Rue for making
"bogus entries on her time sheets." As for Richardson, plaintiff's
only reference to him is found in the assertion that "[o]n December
16, 2004, Bruce Richardson, a Christian and black Legal Coordinator
came late and left early." Plainly, even if this assertion is true,
it does not reflect any violation of plaintiff's rights by
Richardson. Necessarily, then, plaintiff fails to state a claim
against this defendant.

The remaining two defendants who seek dismissal for lack of
proper allegations of participation by them in wrongful conduct are
Warden Richard Palmer, Jr. and Investigation Captain Raymond Eck.
They are mentioned in paragraph 25 of the complaint. The pertinent
allegations (from both paragraphs 24 and 25) report that on one
occasion plaintiff was improperly required to submit to a search
while entering a Department facility, whereas other employees were
not searched. Plaintiff then asserts that "[u]pon information and
belief and at all times relevant herein the above incident was

26

reported to and[/]or was investigated by John R. Mercado, Assistant Chief Division III, Richard Palmer[,] Jr.[,] Warden V.C.B.C.[,] Raymond Eck[,] Investigation Captain Shield No. 1402[,] and Neil Schulman[,] Deputy Warden of Administration." (Compl. ¶ 25). The cited paragraph goes on to allege that the listed defendants

> were responsible for operating the Vernon C. Bain Correction Center and for assuring that investigations were effectively undertaken into complaints against correction officials who acted wrongfully . . . . They were responsible for assuring that an effective investigation was undertaken and a recommendation for the imposition of discipline made over and against Correction Officer Alves and Captain Basile upon the complaint of this plaintiff.

(Compl. ¶ 25).

Defendants Palmer and Eck seek dismissal. They argue that, as supervisory officials, they cannot be held liable for constitutional torts based solely on their alleged receipt of a complaint about an incident. (Defs.' Mem. at 9 (quoting Hernandez v. Goord, 312 F. Supp. 2d 537, 547 n.6 (S.D.N.Y. 2004))). This point is certainly correct, notwithstanding the observation by the Second Circuit in Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995), that liability may be imposed on a supervisor if he can be shown to have learned of misconduct and failed to correct it. Mere receipt of an accusation and the possible failure of investigators to conduct an adequate investigation –- which seems to be the most that plaintiff alleges –- does not meet this requirement. See,

27

e.g., Hernandez, 312 F. Supp. 2d at 547 n.6; Salaam v. Adams, 2006 WL 2827687, *at 11-12 (N.D.N.Y. Sept. 28, 2006); Linares v. Mahunik, 2006 WL 2595200, at *11-12 (N.D.N.Y. Sept. 11, 2006); Hernandez v. Goord, 2006 WL 2109432, at *8 (S.D.N.Y. July 28, 2006); Malloy v. City of New York, 1996 WL 648927, at *2 (S.D.N.Y. Nov. 7, 1996). Cf. Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004); Back v. Hastings-on-Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). There must be some indication that the supervisor actually learned that a subordinate had engaged in misconduct and then declined to act to correct the misconduct. The plaintiff does not allege actual knowledge and a subsequent failure to remedy discriminatory behavior, nor does he allege that these supervisors created or acquiesced in a policy of unconstitutionally discriminatory practices. See Colon, 58 F.3d at 873. Necessarily, then, his pleading does not state a viable claim against Palmer and Eck.

Finally, defendants also assert that if plaintiff is seeking to press City and State law claims under the New York City and State Human Rights Laws as against these six defendants, those claims too should be dismissed. This argument is based on the recognized principle that individual liability under those statutes may be imposed only on individuals who participate in the alleged misconduct. See, e.g., Tomka v. Seiler, 66 F.3d 1295, 1317 (2d Cir.

28

1995); <u>King v. Town of Walkill</u>, 302 F. Supp. 2d 279, 296 (S.D.N.Y. 2004). Plaintiff offers no response to this argument, and we agree that the allegations in the complaint pertinent to Sheard, Schott, Richardson, Palmer, and Eck do not state a viable claim for employment discrimination due to the plaintiff's failure to allege these defendants' personal involvement in the alleged discrimination. In any event, for reasons previously stated, these statutory claims against all defendants fail by virtue of plaintiff's election of the SDHR remedy.


C. <u>Defendants' Miscellaneous Dismissal Arguments</u>


Defendants conclude with a potpourri of arguments, all very briefly presented, as to why some of plaintiff's federal and state-law claims should be dismissed. We address them <u>seriatim</u>.


Defendants assert first that to the extent that plaintiff seeks to invoke conspiracy claims under sections 1983 or 1985, he fails to state a claim. (Defs.' Mem. at 11). They do not bother to explain why -- their argument is limited to one sentence -- but we infer from a parenthetical they offer as part of a citation of one District Court decision that they view plaintiff's section 1983 conspiracy allegations as defective because they are purely conclusory and his section 1985 conspiracy claim as deficient

because it fails to plead a class-based animus.[10]

The latter critique, if that is what defendants intend, is plainly misguided since the complaint is rife with allegations that White, Black and Christian employees were given favorable treatment by the Correction Department. (E.g., Compl. ¶¶ 25, 37, 40, 56, 68). Defendants' first criticism -- of the section 1983 conspiracy claim -- is more persuasive since the conspiracy allegations, typified by the pleading in paragraph 41, do in fact consist solely of conclusory assertions that various individuals, ranging from fellow legal supervisors to correction officers to high-level Department officials conspired against plaintiff. (E.g., Compl. ¶¶ 41, 55). Therefore, as pled, the conspiracy claims under section 1983 are deficient and should be dismissed.

Defendants next assert that plaintiff's invocation of the Eighth Amendment is inadequate because plaintiff "is not subject to cruel and unusual punishment." (Defs.' Mem. at 11-12). Defendants refer to no specific part of the lengthy complaint, and they cite no case law for their one-sentence argument. Nonetheless, we find

---

[10] Defendants cite Fulani v. McAuliffe, 2005 WL 2276881, at *4-6 (S.D.N.Y. Sept. 19, 2005), and add the parenthetical "plaintiff's alleged conspiracy claim under § 1983 fails because it contains only conclusory allegations; plaintiff's alleged conspiracy claim under § 1985 fails because it alleges no class-based invidious animus." (Defs.' Mem. at 11).

that plaintiff necessarily fails to state a claim under the Eighth Amendment.  It is clear that the Amendment's prohibition of cruel and unusual punishment is generally limited to the criminal process and criminal punishment, Ingraham v. Wright, 430 U.S. 651, 666-68 (1977), and "to persons convicted of or entering a plea of guilty to a crime." Tibbs v. Williams, 263 F. Supp. 2d 39, 41 (D.C. Cir. 2003) (citing Bell v. Wolfish, 441 U.S. 520, 536 n.17 (1979)). See also Cadet v. Bulger, 377 F. 3d 1173, 1196 (11th Cir. 2004). Although the Eighth Amendment also applies to government misconduct that is the functional equivalent of criminal punishment, see, e.g., Hudson v. McMillian, 503 U.S. 1, 5-7 (1992), it is simply inapplicable to claims brought by a government employee about the conditions of his employment. See Ingraham, 430 U.S. at 667-68 ("In the few cases where the Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable.")

    Defendants follow with a brief argument that the Thirteenth Amendment, which plaintiff also cites in his complaint, does not provide a basis for relief. We agree. To be viable, claims under the Thirteenth Amendment must rest on allegations of compelled labor, see, e.g., United States v. Kozminski, 487 U.S. 931, 943 (1988); Immediato v. Rye Neck School Dist., 73 F.3d 454, 459 (2d

31

Cir. 1996), and plaintiff fails to suggest that he was ever compelled, under the threat of some form of sanction, to work for the Department of Correction.

Defendants' next two arguments -- each consisting of a single unenlightening sentence -- are plainly inadequate. As the Supreme Court recently observed in a slightly different context, the courts "surely have no obligation to assist attorneys representing the State." Day v. McDonough, 126 S.Ct. 1675, 1684 (2006). Defendants' minimalist arguments on these points do not justify requiring the court to engage in an analysis that defendants' counsel has disdained. We quote each of these arguments in its entirety.

The first, which seems to be premised on the notion that some of plaintiff's state-law claims are legally inadequate, reads as follows: "To the extent that plaintiff purports to assert claims of defamation, invasion of privacy and other state law claims, he fails to allege all the necessary elements." (Defs.' Mem. at 12). Defendants do not specify which claims -- other than defamation and invasion of privacy -- they are targeting, they fail to identify which elements are required that plaintiff has omitted, and they cite not a shred of legal authority. This presentation would likely be inadequate if offered by a pro se litigant, and it is surely inadequate when the moving parties are represented by counsel. This

aspect of defendants' motion should accordingly be denied.

Defendants' second set of arguments is based on their contention that some of plaintiff's claims are barred by his failure to exhaust administrative remedies or are time-barred. This argument reads in full: "In addition, some of the tort claims are barred because they were not properly included in notices of claim and/or are barred by the statute of limitations." (Id.) Defendants fail to identify which claims they contend were not "properly" exhausted nor do they offer any indication -- either by evidence or by argument -- as to the nature of the plaintiff's exhaustion failings. In short, they offer no basis for the court to act on their purely conclusory assertions. As for defendants' limitations argument, it suffers from the same defects. Defendants do not identify which claims they contend are time-barred, nor do they go so far as to identify which limitations periods they are invoking, and they offer no legal authority for whatever argument they may be implying although not stating.[11] In short, defendants' attempt to

---

[11] Defendants' reply memorandum addresses the potentially applicable statutes of limitations with somewhat more specificity. (See Defs.' Reply at 8). Even if we were to accept these arguments despite their having been raised for the first time in the reply brief, see United States v. Yousef, 327 F.3d 56, 115 (2d Cir. 2003)("We will not consider an argument raised for the first time in a reply brief."); United States v. Greene, 285 F.3d 158, 170 (2d Cir. 2002); Global Crossing Estate Representative v. Winnick, 2006 WL 2212776, at *11 (S.D.N.Y Aug. 3 2006); Curto v. Medical World Commc'ns, 388 F.Supp. 2d 101, 108-109 (E.D.N.Y. Aug. 2, 2005), the argument in the reply still

invoke these two defenses is plainly inadequate.

Finally, defendants suggest that if plaintiff's federal claims are dismissed, his state-law claims should also be dismissed rather than retained pursuant to the court's supplemental jurisdiction. (Defs.' Mem. at 12 (citing <u>Giordano v. City of New York</u>, 274 F.3d 740, 754 (2d Cir. 2001))). Since, however, the bulk of plaintiff's federal claims are not subject to dismissal on the grounds urged by defendants, there is no basis for relinquishing supplemental jurisdiction over the state-law claims at the present time.[12]

_____

lacks adequate support to warrant dismissal of plaintiff's remaining claims.  For instance, the defendants direct the court's attention to several paragraphs in the complaint as supposedly embodying plaintiff's allegations of "defamation, libel, slander, harassment, common law assault, battery, and false imprisonment" (Defs.' Reply at 8), and they state that "all such claims by plaintiff preceding April 19, 2004 . . . are time-barred and must be dismissed."  (<u>Id.</u>) None of the paragraphs cited, however, refers to incidents occurring before April 19, 2004.  (<u>See, e.g.</u>, ¶¶ 36, 37 (referring to incidents only as far back as November and December of 2004)).

[12] The court may retain jurisdiction, of course, only over the state-law claims that are not barred by New York's statutory provision mandating election of remedies, as discussed previously.

CONCLUSION

For the reasons noted, we recommend that defendants' motion to dismiss be granted only with respect to the City and State Human Rights Law claims that pre-date the SDHR proceeding, the claims asserted against defendants Sheard, Schott, Richardson, Palmer and Eck, the conspiracy claims under section 1983, and the Eighth and Thirteenth Amendment claims.  In all other respects the motion to dismiss should be denied.

Pursuant to Rule 72 of the Federal Rules of Civil procedure, the parties shall have (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Sidney H. Stein, Room 1010, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated: New York, New York**
**October 31, 2006**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
to:

Mr. Iqbal Naz Sulehria
1671 East 17th Street
Apt. 1C
Brooklyn, New York 11229

Amy Grossberg, Esq.
Assistant Corporation Counsel
  for the City of New York
100 Church Street
New York, New York 10007

36